# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**JONATHAN R. HIERL,**

    Plaintiff,

  **-vs-**                                  **Case No. 13-C-264**

**THE MAREK GROUP, Inc.,**

    Defendant.

## DECISION AND ORDER

      Jonathan R. Hierl worked for The Marek Group as a bookbinder apprentice from May of 2008 until November, 2011. In this lawsuit, Hierl brings claims against Marek for interference and retaliation in violation of the Family and Medical Leave Act ("FMLA"). Hierl also alleges that Marek failed to pay him according to the wage scale set by the applicable collective bargaining agreement. Marek moves for judgment on the pleadings, Fed. R. Civ. P. 12(c), arguing that Hierl's claims are either preempted by Section 301 of the Labor Management Relations Act ("LMRA") or are implausible under federal pleading standards. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). For the reasons that follow, this motion is denied.

      A motion for judgment on the pleadings is evaluated using the same standard as a motion to dismiss for failure to state a claim. *Buchanan-Moore v. Cnty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009). To survive such a motion, a complaint

does not need detailed factual allegations, but it must contain more than labels and conclusions or a formalistic recitation of the elements of a cause of action. *Twombly*, 550 U.S. at 555. Ultimately, the complaint must include "enough facts to state a claim to relief that is plausible on its face." *Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2009). To be facially plausible, the complaint must allow the Court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The "tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* The following facts, gleaned from the complaint and various documents referenced therein,[1] are presumed to be true for purposes of this motion.

Marek is a print, bindery and finishing company with its principal place of business in Waukesha. On May 1, 2008, Hierl accepted a position with Marek as a bookbinder apprentice. Hierl was placed on a forty-eight (48) month apprenticeship program, after which it was agreed that he would receive his journeyman's card and be paid the journeyman's rate. Hierl's employment was governed by the terms of the collective bargaining agreement between Marek and the Graphic Communications Conference, International Brotherhood of Teamsters, Local 577-M. The CBA

---

[1] Marek's motion attaches the collective bargaining agreement and various documents relating to Hierl's union grievance, discussed below. The Court can consider these documents without converting this motion into one for summary judgment. *Venture Assoc. v. Zenith Data Sys.*, 987 F.2d 429, 431 (7th Cir. 1993) ("Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim").

provides a specific wage scale for apprenticeship employees.

On April 15, 2011, Hierl submitted a written complaint to Marek regarding the progress of his apprenticeship program. In a May 3 meeting, Hierl expressed concern that he had not been given the opportunity to learn certain necessary skills to complete the program. Marek agreed that Hierl would receive five hours of dedicated training time per week to assist him in completing the apprenticeship training program.

On June 21, Hierl's union filed a grievance alleging that Hierl should be promoted to a journeyman and be paid the journeyman rate while the company continued his training. In late June-early July, Hierl was informed by his supervisor that the company's long term plan was to place him on second shift as a journeyman. During this period, and during the three month training period, Hierl was informed by a number of supervisors that he was meeting the training requirements and doing a good job, particularly on first shift.

On July 8, Hierl submitted a leave request regarding a finger/hand injury. On or about July 11, Hierl completed a Report of Injury Form and a request for Family Medical Leave. Due to his injuries, and also to attend medical appointments, Hierl took FMLA leave on the following dates: July 6-8; August 3-5; and the entire week of August 26. His doctors also required him to work light duty due to his injuries and referred him to a hand surgeon. On August 8, Hierl told Marek about his light duty requirement and the possibility of hand surgery.

On the same day, Hierl attended a meeting regarding his grievance. Hierl was
- 3 -

informed that he was not capable of being a journeyman bindery worker, that he would be demoted from apprentice bookbinder to experienced bindery worker, and that he would be receiving a $5.00 wage decrease per hour.  Hierl was told that he could accept this position or be terminated.  Hierl eventually quit on November 4, 2011.  He alleges that he was constructively discharged.

Marek argues that Hierl's wage claim is preempted by Section 301 of the LMRA.  29 U.S.C. § 185(a).  The preemptive force of § 301 is "so powerful as to displace entirely any state cause of action for violation of contracts between an employer and a labor organization."  *Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 23 (1983).  "Any such suit is purely a creature of federal law, notwithstanding the fact that state law would provide a cause of action in the absence of § 301."  *Id.*  Yet "not every dispute concerning employment, or tangentially involving a provision of a collective-bargaining agreement, is pre-empted by § 301 or other provisions of the federal labor law."  *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 211 (1985).  Accordingly, a "question of state law, entirely independent of any understanding embodied in the collective-bargaining agreement" can go forward as a state-law claim, *Livadas v. Bradshaw*, 512 U.S. 107, 125 (1994), but a claim which is "sufficiently dependent on an interpretation of the CBA" is preempted.  *Baker v. Kingsley*, 387 F.3d 649, 657 (7th Cir. 2004).  Therefore, the Court must determine the extent to which Hierl's state law claim will require interpretation of the applicable CBA.  This issue, which requires "case-by-case factual analysis . . .

- 4 -

continues to cause some bewilderment." *In re Bentz Metal Prods. Co., Inc.*, 253 F.3d 283, 285, 286 (7th Cir. 2001). "While preemption is a strong federal policy, Congress has not exercised authority to occupy the entire field of labor legislation, and it did not explicitly declare the extent to which it intended § 301 to preempt state law. What has become clear is that preemption can extend beyond contract disputes to other state law claims if resolution of those claims is sufficiently dependent on an interpretation of a CBA." *Id.* at 286.

Hierl's claim is that Marek did not pay him all that he was owed under the wage scale set forth in the CBA. If true, and if the claim is not preempted, this would trigger liability for failure to pay wages in a timely manner under Wisconsin's wage claim statute. Wis. Stat. § 109.03(1). It would also trigger the statute's penalty provisions. § 109.11(2)(b) (a court "may order the employer to pay to the employee, in addition to the amount of wages due and unpaid to an employee . . . increased wages of not more than 100% of those wages due and unpaid").

This claim is similar to the one in *Livadas*, which involved a state law claim for failure to promptly pay all wages due upon severance. In *Livadas*, the Supreme Court found against preemption, reasoning that the "bare fact that a collective-bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished." *Id.* at 124 (citing *Lingle v. Norge Division of Magic Chef, Inc.*, 486 U.S. 399 (1988)). In *Lingle*, the Court explained that a CBA "may, of course, contain information such as rate of pay and other economic

benefits that might be helpful in determining the damages to which a worker prevailing in a state-law suit is entitled. . . . In such a case, federal law would govern the interpretation of the agreement, but the separate state-law analysis would not be thereby pre-empted." *Lingle* at 413, n.12. Accordingly, the "mere need to 'look to' the collective-bargaining agreement for damages computation is no reason to hold the state-law claim defeated by § 301." *Livadas* at 125; *see also In re Bentz* at 289 ("resolution of a claim must require interpretation of a CBA, not a mere glance at it . . .").

Marek argues that Hierl's claim requires an interpretation of various provisions of the CBA, but quite frankly, the Court has no idea if this is actually the case. Generally speaking, wage scale is a function of employee classification under the CBA, but the CBA doesn't say anything about how or why a particular employee is governed by a specific classification. For example, a bookbinder apprentice is entitled to a specific wage scale, but the CBA doesn't explain why an employee should be considered a bookbinder apprentice. In this case, it appears that Hierl was a bookbinder apprentice only because that was the position he accepted when he started working at Marek. It therefore stands to reason that the correct classification can be determined without "interpreting" the CBA. Drawing all reasonable inferences in Hierl's favor, he has stated an actionable, non-preempted claim under state law.[2]

---

[2] Marek also argues that Hierl is bound by the settlement of his grievance, whereby he was demoted from apprentice bookbinder to experienced bindery worker, effective August 25, 2011. ECF

- 6 -

As noted, Marek also argues that Hierl failed to state plausible claims under the FMLA for interference and/or retaliation. The Court disagrees. Hierl's complaint provides more than enough facts to state facially plausible claims. *See, e.g.,* Complaint, ¶ 19 ("Between August 30, 2011 and September 8, 2011, Hierl was subjected to a series of spurious allegations regarding his job performance, denied shift transfers that were required by the contract, and subjected to allegations that he would be disciplined because certain days he had requested FMLA leave for a serious work condition were not covered"); ¶ 28 ("Marek Group interfered with Hierl's ability to take FMLA by denying certain days or disciplining him for FMLA leave, and by demoting him to a lesser position and reducing his wages after requesting and using FMLA leave").[3]

Marek's motion for leave to file a corrected brief [ECF No. 23] is **GRANTED**, but its motion for judgment on the pleadings [ECF No. 14] is **DENIED**. On **October 8, 2013** at **10:30 a.m. (CST)**, the Court will conduct a telephonic scheduling conference. The parties should refer to the Court's previous notice [ECF No. 9] for details.

---

No. 15, Ex. B, C. Hierl might be precluded from challenging this outcome, *Dykes v. Se. Pa. Transp. Auth.*, 68 F.3d 1564, 1569-70 (3d Cir. 1995), but the majority of Hierl's wage claim does not relate to the period of time after August 25. Complaint, ¶ 39.

[3] Marek's argument that the FMLA claims are preempted by § 301 requires little discussion. *Watts v. United Parcel Service, Inc.*, 701 F.3d 188, 191 (6th Cir. 2012) ("The animating purpose of § 301 preemption is to ensure that federal labor law uniformly prevails over inconsistent interpretations of CBAs by state courts. When a claim asserts a right arising under federal law, and is filed in federal court, that rationale does not apply") (internal citations omitted).

Dated at Milwaukee, Wisconsin, this 26th day of August, 2013.

                                        **BY THE COURT:**

                                        _____
                                        **HON. RUDOLPH T. RANDA**
                                        **U.S. District Judge**